STATE OF MISSOURI, Respondent, v. BENJAMIN AUFFART, Appellant.

**Kansas City Court of Appeals, November 1, 1915.**

1. **INDICTMENTS AND INFORMATIONS: Roads and Highways: Obstruction of Highways.** The defendant was charged by information with obstructing a highway, and convicted. The defendant contended that the old fence marked the south boundary line of the land dedicated by his grantor, and that in the absence of public use of this strip of land, there was no dedication, and the boundary between the road and defendant's land is still on the line of the old fence. *Held*, that the court did not err in finding the issues for the State.

2. ———: ———: ———. The principal object of judicial inquiry in the obstruction of roads and highways, after it is dedicated and the boundary line of such road or roads is in dispute, is to ascertain the intention of the dedicator with reference to the boundaries of his grant and such intention is to be ascertained from his acts in the light of their circumstances.

Appeal from Nodaway Circuit Court.—*Hon. Wm. C. Ellison*, Judge.

AFFIRMED.

*William G. Sawyers* for respondent.

*Cook, Cummins & Dawson* for appellant.

JOHNSON, J.—The defendant appeals from a conviction in the circuit court of Nodaway county under an information charging him with the obstruction of a public highway. During the progress of the trial the parties, with the aid of suggestions from the court, endeavored to reduce the issues to a single question of law and, feeling they had succeeded, agreed that the jury might be discharged and the cause submitted to the court sitting as a trier of the facts. But from the positions assumed by the parties in this court it appears they were not as successful in eliminating controversial facts as they believed at the trial.

In the early settlement of Nodaway county and more than thirty years ago, Charles Carr, the owner of a large tract of land near Maryville, laid out and opened to public use a road about fifty feet in width running east and west across his land along a section line. The road was not opened pursuant to order of court or any statutory proceedings and it became a public highway solely by dedication *in pais* and public user. During the past thirty years or more the boundaries of this road apparently were marked by hedge fences set out and grown by Carr, the owner, but it is claimed by defendant that the south boundary line, at first, was defined by a post and board fence which Carr built on a line from six inches to three or four feet north of the line of the hedge subsequently planted. When the hedge became a barrier sufficient to turn stock, the fence was allowed to decay and disappear and has been wholly non-existent for more than thirty years. Some years ago Carr died, his land descended to his heirs and the land on the south side of the road is in possession of defendant as tenant. In April, 1914, defendant built a post and wire fence on the line which he claims was the line of the first post and board fence; that is to say, on a line from six inches to three or four feet north of the hedge, and this new fence constitutes the obstruction alleged in the information.

At the first of the trial, counsel for defendant, in answer to a question from the court, announced the position of the defendant to be that the road in question "is a public road by dedication without any definite boundary lines and the defendant had a right to put his fence where he did, so that he didn't interfere with the public use of the road."

It appears from the evidence that the roadway actually traveled by the public and maintained in condition for such use was in the middle of the space between the hedges; that there was a drainage ditch along the south line of that roadway and south of the ditch there was a bank four or five feet high. The space between the top of the bank and the hedge never had been worked or used for travel, but for some years had been occupied by a telephone pole line which, approximately, is on the line of the new fence. From a colloquy in the record, the court seems to have understood counsel for defendant as taking the position that the road actually dedicated *in pais* by Carr "is only a road insofar as it was actually traveled and used" and, therefore, that defendant had a right to treat the space on the top of the bank north of the hedge as his own land upon which he might build a fence at any place he chose. On this supposition the court concluded that the case was reduced to a single question of law and strongly intimated that the fact of whether or not a fence first had been built by Carr along the line of the present fence was unimportant, saying to counsel for the State, "You ought to be willing to admit for the purposes of this case there was some sort of fence there where this wire fence is now thirty odd years ago." Counsel replied that he would admit that fact "for the sake of this case" but asserted that he was prepared to show by witnesses that such fence never had been in existence.

As the trial progressed, counsel for defendant indicated that the real point advanced in defense of the

action was that the old fence marked the south boundary line of the land dedicated by Carr and that in the absence of use by the public of the narrow strip added to the right of way by the substitution of the hedge for the old fence, there was no dedication of that strip and the boundary between the road and defendant's land is still on the line of the old fence.

Such is the contention now pressed upon our attention and we are cited to the following cases as sustaining it: Moore v. Hawk, 57 Mo. App. 495; State v. Campbell, 80 Mo. App. 110; Board ex rel. v. McPherson, 172 Mo. App. 369.

We think defendant has failed to bring himself within the rule of those cases, even with the aid of the admission of counsel for the State that the first fence built by Carr was on the line of the present fence and was from six inches to three or four feet north of the hedge subsequently planted and grown. There is nothing in this admission to exclude the inference of fact which finds strong support in the evidentiary facts and circumstances of the case that the dedication *in pais* actually intended by Carr, the owner, and accepted by public use, included the strip afterwards defined by the hedges and that the old board fence was built and maintained merely as a screen or guard for the young hedge and as a mere temporary enclosure for the farm. The closeness of the fence to the hedge indicates that such was its purpose and that it was not intended to be treated as a permanent structure. Since the fact of the dedication *in pais* is conceded and the fact that the land dedicated was definitely defined by the donor is apparent, the main question at issue is the location of the south boundary line and that question is resolved by the evidence into an issue of fact which the judgment of the court, sitting as a trier of fact, has settled in favor of the contention of the State that the boundary line from the first was that upon which the hedge afterwards was planted.

The case is vitally different from that before us in Moore v. Hawk, supra, where the fact was indisputably established that the fence marked the line of the land dedicated and the hedge afterward planted from five to ten feet from the fence was intended merely as a windbreak to shelter stock, and not as a boundary. Our opinion in the recent case of Board ex rel. v. McPherson, supra, is not at variance with our present views. We recognized in that opinion the rule that the principal object of judicial inquiry in such cases is to ascertain the intention of the dedicator with reference to the boundaries of his grant, such intention to be ascertained from his acts in the light of their circumstances, and that such inquiry, as in the present case, frequently resolves itself into the solution of an issue of fact.

Moreover, we find evidence of a public use of the strip between the hedge and the edge of the bank. Public use of a highway is not confined to travel in vehicles. A telephone line in a road is a public use and the maintenance of the telephone pole line as close to the hedge as it conveniently could be placed would justify the conclusion as one of fact that the public, with the acquiescence of the landowner, had accepted and was using the right of way as defined by the hedge. The court did not err in finding the issues for the State. The judgment is affirmed.

All concur.

## CONCURRING OPINION.

TRIMBLE, J.—I concur in the foregoing opinion, but inasmuch as appellant seems to have been induced to take the position he does by my opinion in Board ex rel. v. McPherson, 172 Mo. App. 369, it may not be amiss to say a few words in regard thereto. In that case the sole question was whether the court had erred in taking the case from the jury, and it was stated that if a single fact involved were in dispute,

then it was error to direct the jury to return a particular verdict. But since there was no dispute over the facts showing that the road had been dedicated *in pais* by the owner up to the hedge as the boundary line of the road, and that the ground on which the trespass was charged to have been committed was on the strip so dedicated, there was no issue to be submitted.

Attention was called to the fact that the case was unlike Moore v. Hawk, 57 Mo. App. 495, because in that case there was unquestionably no dedication by the owner up to the hedge but only to a distance of fifteen feet from the center of the highway in order to give one-half of a thirty foot road, while in the McPhearson case everything in the owner's conduct went to show that he dedicated up to the hedge and nothing to show he had any intention of dedicating a lesser strip; or, if the mere existence of a rail fence outside of the hedge could be regarded as showing a dedication of a lesser strip, then the admission of the plaintiff that the land entered upon by the defendant was still outside such fence left no issue for the jury to determine. The opinion, however, on page 375, in saying that the case was unlike Moore v. Hawk, incautiously and inaccurately said: ''If that were the case here, if the former landowner had by any act indicated an intention to dedicate a strip of lesser extent than to the hedge, then the land south of such indicated line would belong to relator even though unfenced for many years, since, in the absence of actual user, the public would obtain no rights beyond the line first established.'' What was intended to be said was that it was *undisputed* or *conclusively* shown that the landowner had dedicated a lesser strip, then the land in excess thereof would, in the absence of user by the public, belong to the owner even though unfenced for many years. But if the width of the strip dedicated was in dispute and there were acts of the owner tending to show the dedication of a lesser strip then the question must be left to the

jury to say whether the dedication extended far enough to place the ground in question inside or outside of the roadway.

In the case now written by Judge JOHNSON it was left to the court sitting as a jury. The court found that the land was dedicated as a road clear up to the hedge notwithstanding the State's admission that there had been at one time a fence outside the hedge. The evidence being ample to sustain such a finding, the appellate court will not disturb it.